IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

| | |
|---|---|
| JOSH DEWITZ, | Cause No. CV 10-23-M-DWM-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| SAM LAW, Warden; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

_____

On March 15, 2010, Josh Dewitz ("Dewitz") filed this action for writ of habeas corpus under 28 U.S.C. § 2254. Dewitz is a state prisoner proceeding pro se.

On March 30, 2010, Respondents were ordered to file the trial transcript. They did so on April 15, 2010.

**I. Background**

On August 17, 2004, Dewitz was traveling to Oregon. He and his companion, Tanisha Ashley, stopped for the night at the Microtel Motel in Missoula. They took

separate rooms. At some point during the night, they left in a hurry. Dewitz had set his room on fire while attempting to cook methamphetamine. Ashley insisted that Dewitz drop her and her infant daughter off at a gas station. He did so and fled. State v. Dewitz, 212 P.3d 1040, 1044 ¶¶ 12-14 (Mont. 2009).

In Room 332, investigators found a woman's personal items, baby bottles, diapers, and the like. They also found a snort tube and a piece of burnt tin foil containing methamphetamine residue. Id. at 1044-45 ¶ 18.

In Room 330, investigators found a man's personal items, a flaming pot of chemicals, a hot plate, Epsom salts, isopropyl alcohol, STP gas treatment, tubing, a funnel, rubber gloves, lithium batteries, a digital scale, duct tape, a gas mask, and various bottles of liquid. Inside the flaming pot was a tri-layered amber liquid. The top layer was methamphetamine. Id. at 1045 ¶ 19.

Dewitz was arrested in Oregon on September 21, 2004. He and Ashley were charged with operation of an unlawful clandestine laboratory and criminal endangerment. Ashley pled guilty to criminal possession of dangerous drugs and criminal possession of paraphernalia, and the other charges against her were dismissed. She testified against Dewitz at trial. The jury convicted him on both counts. He was sentenced to prison for a total of twenty years, with ten suspended. Id. at 1045 ¶¶ 21-22; Pet. (doc. 1) at 2-3 ¶¶ 1-6.

Dewitz appealed. On June 9, 2009, the Montana Supreme Court rejected his claims and affirmed his conviction. Pet. at 3 ¶ 8.

Dewitz filed a petition for postconviction relief in the trial court but did not appeal its dismissal or denial because "the issues had already been before the Montana Supreme Court." Id. at 3-4 ¶¶ 11-13.

Dewitz timely filed his federal habeas petition and deposited it in the prison mail system on March 5, 2010. Id. at 9, Pet'r Decl. ¶ C; Houston v. Lack, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

## II. Dewitz's Allegations

Dewitz claims that the trial court violated his right to a fair trial by:

(1)    permitting an officer to testify about what witnesses at the motel said;

(2)    admitting testimony that he had used methamphetamine in the past;

(3)    admitting testimony despite "lack of proficiency of witnesses presented as 'expert'";

(4)    failing to instruct the jury that Ashley was an accomplice;

(5)    permitting the prosecutor to state that Ashley was not an accomplice;

(6)    denying his motion to dismiss, which was based on "the fact that the State failed to produce legally corroborating evidence independent of Tanisha Ashley"; and

(7) failing to excuse a 911 operator from the jury for cause.

Pet. at 4-8 ¶¶ 15A-15E.

## III. Analysis

With one exception, the Montana Supreme Court considered each of Dewitz's current claims on the merits on direct appeal. The exception is Claim 2.

### A. Defaulted Claim: Past Methamphetamine Use (Claim 2)

Dewitz claims the trial court erred by admitting Ashley's testimony that she and Dewitz used methamphetamine together in the past. Pet. at 4 ¶ 15A; Trial Tr. at 275:22-276:4. Dewitz raised the claim on direct appeal, but it was not considered because Dewitz did not timely object at trial. Dewitz, 212 P.3d at 1051-52 ¶¶ 56-64. While the claim is likely procedurally defaulted, it is more efficient to address its merits de novo.

"A successful petition for collateral relief rooted in a claim of trial error must demonstrate actual prejudice, that is, a 'substantial and injurious effect or influence in determining the jury's verdict.'" Renderos v. Ryan, 469 F.3d 788, 798 (9th Cir. 2006) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), and Kotteakos v. United States, 328 U.S. 750, 758 (1946)); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007).

Ashley's brief testimony about Dewitz's use of methamphetamine eight months

before they came to Missoula probably should not have been admitted, but its impact on the jury could only have been minor. Ashley testified that Dewitz possessed methamphetamine and paraphernalia in Missoula and that he was willing to consider manufacturing methamphetamine:

> Q. What charges did you plead guilty to?
>
> A. Possession of methamphetamines and misdemeanor possession.
>
> Q. And that was the methamphetamine and paraphernalia found in the room you were staying in.
>
> A. Yes.
>
> Q. How did those items get into your room?
>
> A. Earlier that night before I had went to get the gas, Josh had left them for me if I wanted to –
>
> Q. Did you ever talk to Josh after you were arrested?
>
> A. Yes.
>
> Q. Did he make any admissions to you?
>
> A. Yes.
>
> Q. What did he tell you?
>
> A. He just – I didn't really ask too much outside of how the fire happened and he said that he was doing something with the – a bucket and it caught on fire, and he went to put it out and it – fire shot within a two-foot radius, including on him.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

> Q. Had Joshua ever talked about making dope?
>
> A. Yeah. Weeks prior.
>
> Q. Had you ever seen him make dope before?
>
> A. No.
>
> Q. And have you ever made dope?
>
> A. No.

Trial Tr. at 290:10-291:9. Dewitz did not object to any of this testimony. He also elicited Ashley's admission that she – not Dewitz – used methamphetamine "two days before [she] came to Missoula." Trial Tr. at 298:23-25. In light of these portions of Ashley's testimony, to say nothing of the other evidence, it is highly unlikely that the jury would have acquitted Dewitz if only it had not known he used methamphetamine in the past before he came to Missoula. Any error was harmless. Claim 2 should be denied on the merits.

### B. Claims Addressed on the Merits in the Montana State Court

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Dewitz may obtain relief if the state court's denial of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the state court's denial was "based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

A state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [its] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407.

In sum, a federal court sitting in habeas must be convinced that the state court's decision is "more than incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). The state court's decision must be "objectively unreasonable." Id.

### 1. Accomplice Issues (Claims 4-6)

Three of Dewitz's claims concern Ashley's status as an accomplice. On direct appeal, and in his brief in support of his federal petition, he argues that it was error for the trial court to refuse to instruct the jury that Ashley was an accomplice (Claim 4) and for the prosecutor to suggest in closing argument that she was not (Claim 5). He

also asserts that Ashley's testimony was not sufficiently corroborated by other evidence (Claim 6), so that her testimony should have been excluded and the case against him dismissed for insufficient evidence. Pet. at 5-6, ¶¶ 15B-D.

Under federal law, "[t]he uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless it is incredible or insubstantial on its face." United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir. 1993); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979) (holding evidence insufficient to support conviction if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."). Ashley's testimony, Trial Tr. at 272:23-311:17, was neither insubstantial nor incredible. A rational juror could have believed her. That is all the federal Constitution requires.

While "state laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review," Harrington v. Nix, 983 F.2d 872, 874 (8th Cir. 1993), quoted in Laboa v. Calderon, 224 F.3d 972, 979 (9th Cir. 2000); see also Foster v. Ward, 182 F.3d 1177, 1193 (10th Cir. 1999); United States v. Dickerson, 163 F.3d 639, 643 (D.C. Cir. 1999); Lucas v. Johnson, 132 F.3d 1069, 1078 (5th Cir. 1998), Dewitz might obtain relief on the accomplice claims on a due process theory, if the Montana courts arbitrarily deprived him of something he was

entitled to under state law.[1]  Laboa, 224 F.3d at 979.

Montana law requires corroboration of accomplice testimony.  Mont. Code Ann. § 46-16-213 (1991).  Corroborating evidence may be circumstantial.  It must "show more than that a crime was in fact committed or the circumstances of its commission" and must "raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged."  But it "need not be sufficient, by itself, to support a defendant's conviction or even to make out a prima facie case."  Dewitz, 212 P.3d at 1054-55 ¶ 86 (quoting State v. Black, 82 P.3d 926, 929 ¶ 24 (Mont. 2003)).

Ashley's testimony was sufficiently corroborated by Dewitz's own statements to Ashley's mother, Julia Menendez.  She testified that Dewitz called her a few times on the night in question, was "hysterical" and "crying," and said "he had been burned real bad."  He also told Menendez "he had left my daughter and the baby there at the motel, and he didn't know what to do."  Trial Tr. at 199:22-25; Dewitz, 212 P.3d at 1054 ¶ 82.[2]  Given the ample independent evidence showing that Ashley and her baby

---

[1] Dewitz did not fairly present this claim as a federal due process claim to the Montana Supreme Court, but he argued its merits under state law.  For present purposes in this case, that will suffice.  28 U.S.C. § 2254(b)(2).

[2] Dewitz leaves Menendez's testimony out of account, perhaps because she is Ashley's mother.  Menendez was not an accomplice and her testimony did not require

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

were staying in Room 332 at the Microtel Motel in Missoula when a fire broke out in Room 330, where a man was staying, this testimony raises more than a suspicion that Dewitz set Room 330 on fire. See also Dewitz, 212 P.3d at 1054 ¶¶ 83-84. Even assuming Ashley was an accomplice, the evidence was sufficient to support the verdict.

But that does not mean the jury actually found evidence sufficient to convict Dewitz. The gravamen of his complaint is that the jury may have concluded that Ashley was not an accomplice and, therefore, that her testimony alone was sufficient to support a conviction. That is why he also complains of the prosecutor's remark, in closing argument, that "We really had nothing to tie [Ashley] to that room. . . . If we had had something to tie [her] to that room, we probably would have charged her." Trial Tr. at 406:6-10. As Dewitz sees it, the jury might not have believed a word Menendez said, yet convicted Dewitz anyway solely because it found Ashley credible. Consequently, under Dewitz's reasoning, the jury should have been instructed that Ashley was an accomplice as a matter of law; only with such an instruction would the jury know that it *must* view Ashley's testimony with suspicion and find corroborating evidence before it could convict Dewitz.

---

corroboration. Her potential bias was a matter for the jury to consider, but it could not have affected the admissibility of her testimony.

To prevail on that argument in federal habeas, however, Dewitz must be able to point to an entitlement under state law to a determination of Ashley's status as an accomplice as a matter of law. On the contrary, "[t]he issue of whether a witness for the State is an accomplice is – unless such fact is undisputed – for the jury, based on proper instruction from the court." State v. Johnson, 918 P.2d 293, 295 (Mont. 1996); State v. Blackcrow, 975 P.2d 1253, 1256 ¶ 21 (Mont. 1999), both quoted in Dewitz, 212 P.3d at 1053 ¶ 74. Having concluded the issue of whether Ashley was an accomplice was disputed, the trial court instructed the jury accordingly. Dewitz, 212 P.3d at 1052, ¶ 67. Dewitz was not deprived of the protections offered by state law.

As for the prosecutor's comment in closing argument, it was vouching. By using the word "we," the prosecutor allied herself with the law enforcement officers who testified and the authority of the State of Montana. Trial Tr. at 405:16-406:10. The prosecution's conduct of the prosecution is not evidence to be considered by the jury.

But, again, this is trial error, and Dewitz cannot prevail unless he can "demonstrate actual prejudice, that is, a 'substantial and injurious effect or influence in determining the jury's verdict.'" Renderos, 469 F.3d at 798; Fry, 551 U.S. at 121-22. This was not a case of close calls. There was a fire in Room 330 of the Microtel Motel. Ashley and a flaming pot of methamphetamine were involved. A man's

toiletries were found in Room 330. A man's wallet containing a picture of Dewitz's and Ashley's daughter was found in Room 330. Ashley's mother knew that her daughter and Dewitz were traveling to Oregon together and went through Missoula. Dewitz called Menendez a few times on the night of the fire, crying, hysterical, in pain, and scared to death for Ashley and the baby. Photographs dated September 21, 2004, showed Dewitz with burn marks on his arms. Someone using the name "Jill Delle" sent a letter to Ashley and signed it "Your man, J.D." The return address was the jail at the Salem, Oregon, Police Department. Dewitz was in custody there at the time the letter was sent. The handwriting in the letter was similar to the handwriting in notebooks found in Room 330. There was direct evidence of Dewitz's guilt in his statements to Menendez, and the circumstantial evidence was overwhelming. The prosecutor's statement did not have a substantial effect or influence on the verdict.

The Montana Supreme Court's decision on the accomplice issues was not objectively unreasonable. Claims 4, 5, and 6 should be denied.

### 2. Hearsay (Claim 1)

Dewitz claims that his rights under the Confrontation Clause were violated when Officer Brueckner testified that "witnesses told her they saw a black woman and a white man leave the hotel." Br. at 9. The Montana Supreme Court held that Dewitz waived his Confrontation Clause objection because:

> During cross-examination of Ashley, defense counsel introduced the "Affidavit and Motion for Leave to File Amended Information" from the State's case filed against Ashley. The affidavit and motion stated in part: "Witnesses stated that shortly after the fire alarm sounded, they observed a black female and a white male get into a Subaru and leave. One witness identified Ashley as the woman who had left." The State later elicited testimony from Officer Brueckner that, during her investigation, witnesses told her that two people and an infant had left the scene. Over defense counsel's objection, the court allowed Officer Brueckner to read from the affidavit and motion that had been previously introduced by defense counsel.

Dewitz, 212 P.3d at 1050 ¶ 52.

"As here the accused, by his voluntary act, placed in evidence the testimony disclosed by the record in question, and thereby sought to obtain an advantage from it, he waived his right of confrontation as to that testimony, and cannot now complain of its consideration." Diaz v. United States, 223 U.S. 442, 452-53 (1912). Claim 1 should be denied.

### 3. "Expert" Witness (Claim 3)

Dewitz contends that Detective Brodie was not qualified to testify as an expert about the similarity of the handwriting in the notebooks found in Room 330 and letters received by Ashley. Pet. at 4 ¶ 15A; Br. at 11.[3] The Montana Supreme Court held

---

[3] Dewitz's federal petition and brief and his briefs on direct appeal do not indicate any objection to expert testimony other than Brodie's opinion about handwriting.

that the error was harmless. If there was an error, it was harmless. The jury could decide for itself whether the handwriting was similar. Trial Tr. at 248:9-249:4 (notebook), 291:15-293:1 (letter). Even if they decided it was not, evidence other than the notebook connected Dewitz to Room 330. Supra at 12. Claim 3 should be denied.

### 4. Challenge for Cause (Claim 7)

Chari Lipski's name was drawn as a potential juror in the case. She was a 911 dispatcher and her "significant other" was a city police officer. Trial Tr. at 43:13-14, 44:20-22. Dewitz's counsel challenged her for cause, but his challenge was denied. Lipski was stricken peremptorily and did not serve on the jury. Trial Tr. at 112:10-23.[4]

A prospective juror must be removed for cause if her views would "prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985). The trial

---

[4] Dewitz states that he did not appeal this issue. Pet. at 8. He did. Dewitz, 212 P.3d at 1045-47. He did not directly rely on federal law, but he cited a state case that relied in part on federal law. State v. Good, 43 P.3d 948, 961 ¶ 65 (Mont. 2002) (citing Irvin v. Dowd, 366 U.S. 717, 722 (1961)) ("The accused has a fundamental right to have that most basic of all decisions (guilt or innocence) made by an impartial jury."). For present purposes in this case, that will suffice. Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir. 2005); 28 U.S.C. § 2254(b)(2).

judge removed one juror because she was married to a police officer. Trial Tr. at 9:3-22. But the party seeking the exclude a juror must "demonstrate, through questioning, that the potential juror lacks impartiality." Witt, 469 U.S. at 423; see also McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)). Lipski's responses to questions asked by the trial court and by counsel simply did not make that showing. E.g., Trial Tr. at 32:14-23, 43:10-49:7. Ultimately, when trial counsel asked her whether she would want someone like herself on the jury if she were the defendant, she responded, "Yeah." Id. at 110:8-11.

Nor does the record reveal any reason to disbelieve Lipski's statements. Id. at 48:24-25; Patton v. Yount, 467 U.S. 1025, 1036 (1984); Fields v. Brown, 503 F.3d 755, 766-67 (9th Cir. 2007) (en banc). Though Dewitz argues that she could have been called as a witness or could have been "exposed" to inadmissible information, Br. at 18-19, these possibilities are speculative. There was no evidence that Lipski was working at the time 911 was called or that she had any first-hand information about the case. She said she remembered hearing that the incident at the Microtel "had occurred" and recalled only "a brief generalization" of what she heard. Trial Tr. at 46:2-47:22. And she had not formed an opinion about the case. Id. at 47:10-13. There was nothing unreasonable about the Montana Supreme Court's decision.

Claim 7 should be denied on the merits.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2255 Proceedings.

### A. Governing Law

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c); Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).  To obtain a certificate, Dewitz "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000). Any doubt as to whether the applicant meets the standard is resolved in his favor.  Lambright, 220 F.3d at 1025.

### B. Discussion

There might be some room in this case to question the route to disposition.  Some of Dewitz's claims are probably procedurally defaulted.  But it is not a case where a state prisoner has made a substantial showing that he was deprived of a constitutional right.  The evidence of Dewitz's guilt was overwhelming.

Three of Dewitz's claims involve Tanisha Ashley's status as an accomplice. Federal law does not require corroboration of accomplice testimony. While Dewitz might maintain a federal due process claim if he could show that the Montana courts deprived him of something he was entitled to under state law, he cannot do that here. Montana cases prior to his held that the question of whether a witness is an accomplice is a question of fact for the jury, and that is how his jury was instructed. Whether the jury found Ashley to be an accomplice or not, the evidence was plainly sufficient to corroborate her testimony and support Dewitz's conviction. Reasonable jurists would not find room for debate on Claims 4, 5, and 6.

Ashley's testimony about Dewitz's prior use of methamphetamine was brief, not detailed, and substantially outweighed by evidence that Dewitz had access to methamphetamine and paraphernalia on August 16, 2004, at the Microtel Motel in Missoula, as well as by evidence that he had expressed willingness to manufacture methamphetamine. He does not challenge any of this evidence. Any error in admitting testimony about his use of methamphetamine was harmless. Additionally, this claim is defaulted. A COA is not warranted as to Claim 2.

Likewise, there was only harmless error in admitting a detective's testimony about the similarity of the handwriting in a letter written by Dewitz to Ashley and in notebooks found in the burning motel room. The jury was able to view the letter and

notebooks for itself and make its own comparisons, and there was plenty of evidence other than the notebooks to connect Dewitz to Room 330. A COA is not warranted as to Claim 3.

Dewitz himself was the first to use evidence that he later objected to under the Confrontation Clause. A COA is not warranted as to Claim 1.

Finally, there was no error in the denial of Dewitz's challenge for cause to a prospective juror who was a 911 operator and whose "significant other" was a city police officer. Asked whether she could be fair, she said she could. A COA is not warranted as to Claim 7.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (docs. 1, 2) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within fourteen (14) calendar days

of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Dewitz must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his petition without notice to him.

DATED this 18th day of May, 2010.

       /s/ Jeremiah C. Lynch
      Jeremiah C. Lynch
      United States District Court